```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

    RAHUL SHAH, MD                      1:17-cv-00632-NLH-AMD
    ON ASSIGNMENT OF MARY A.,
                                        **OPINION**
            Plaintiff,

        v.

    HORIZON BLUE CROSS BLUE
    SHIELD OF NEW JERSEY,

            Defendant.


**APPEARANCES**:

MICHAEL GOTTLIEB
DANIEL C. NOWAK
CALLAGY LAW PC
650 FROM ROAD
SUITE 565
PARAMUS, NJ 07652
    *On behalf of Plaintiff*

MICHAEL E. HOLZAPFEL
BECKER LLC
354 EISENHOWER PARKWAY
SUITE 1500
LIVINGSTON, NJ 07039
    *On behalf of Defendant*

**HILLMAN, District Judge**

    This matter concerns claims by an out-of-network physician, as assignee of his patient's rights, against a benefits plan for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., when the plan paid him less than $10,000 for what he valued to be a $217,000 elective spinal surgery.  The Court granted summary judgment in Defendant's favor,

holding that the plan did not abuse its discretion when it paid Plaintiff for his surgical services as an out-of-network provider. Pursuant to Fed. R. Civ. P. 54(d) and L. Civ. R. 54.2, Defendant now moves for an award of attorney's fees incurred in defending this action under the ERISA fee shifting provision, ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). For the reasons expressed below, Defendant's motion will be denied.

## **BACKGROUND & DISCUSSION**

To provide the context for Defendant's motion for attorney's fees, the Court will summarize the facts and holdings from the Court's Opinion granting Defendant's motion for summary judgment. (See Docket No. 16.)

On August 27, 2014, Plaintiff, Rahul Shah, M.D., performed a non-emergency, elective, outpatient spinal surgery on his patient, Mary A. The patient is a participant and beneficiary of a health benefit plan sponsored by her spouse's employer. The plan is administered by Defendant, Horizon Blue Cross Blue Shield of New Jersey, and it is governed by ERISA. Defendant describes the plan it had in place for Mary A.'s spouse's employer as a "70/30 plan" as it relates to out-of-network providers.

At the time of the surgery, Plaintiff was an out-of-network provider under the plan. The patient assigned her rights to benefits under the plan to Plaintiff, who then filed for reimbursement for the surgery. Plaintiff submitted a claim for

$217,363.00, and the plan paid Plaintiff $9,762.95.  Plaintiff followed the plan's appeal process, with the plan ultimately concluding that the reimbursement amount was properly calculated at the rate prescribed by the plan.  In his complaint, Plaintiff claimed that Defendant violated ERISA § 502(a)(1)(B), and sought $207,600.05 – the balance for his entire charge for the surgery - plus interest, attorney's fees, and costs.[1]

Defendant's fee was governed by the terms of the plan, which provided that, as an out-of-network provider, Plaintiff was entitled to 70% of 150% of the Medicare-prescribed amount for the same services.  In a change from his complaint, which asked for reimbursement of his full charge, Plaintiff argued in his summary judgment opposition brief that he should have been paid 70% of his charges - as he himself calculated them - without reference to any other provision in the plan.  Plaintiff's argument was based simply and exclusively on the plan's "Schedule of Covered Services and Supplies," which stated: "Surgical Services – Out-of-Network - Outpatient - Subject to Deductible and 70% Coinsurance."  (Docket No. 11-3 at 56, SCHEDULE OF COVERED SERVICES AND SUPPLIES, A.

---

[1] Defendant removed this action pursuant to 28 U.S.C. §§ 1331, 1441(a) & (c), and 28 U.S.C. § 1446 to this Court from the Superior Court of New Jersey, Law Division, Cumberland County. Federal question jurisdiction exists in this matter pursuant to 28 U.S.C. § 1331.  ERISA further provides that the district courts of the United States shall have at least concurrent, and sometimes exclusive, jurisdiction over the ERISA causes of action pleaded in the complaint. 29 U.S.C. § 1132(e)(1).

COVERED BASIC SERVICES AND SUPPLIES.)  Plaintiff argued that having to unpack, like Russian nesting dolls, the provisions buried in the plan relied upon by Defendant was deceptive and constituted a breach its fiduciary duties.

In assessing Plaintiff's claims, the Court applied an abuse of discretion standard, which required the determination as to whether Defendant was arbitrary and capricious in its interpretation of the plan and resulting payment to Plaintiff.  See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).  The Court found that Defendant did not abuse its discretion, and that "Plaintiff's self-serving interpretation of the plan myopically ignore[d] the clear inter-relationship and correlation between sequential plan provisions and [was] so lacking in support from the terms of the plan itself as to be borderline frivolous."  (Docket No. 16 at 10.)

The Court explained:

> First, even accepting Plaintiff's characterization that the provisions in the plan regarding payment for an out-of-network out-patient surgery must be "unpacked," that does not mean that the plan acted in an arbitrary and capricious manner when it paid Plaintiff's claim in accord with those provisions.  The plan language provides that for an out-of-network surgery, the plan will pay 70% of allowable charges, and those allowable charges are 150% of the Medicare rates, with the plan participant owing 30% of 150% of the Medicare rates to the provider as co-insurance if the provider chose to bill the participant for the additional amount.  As assignee of the plan participant's benefits, Plaintiff is therefore entitled to no more than 70% of the 150% of the Medicare rates directly from Defendant.

Although the plan language is required to be read in reference to several defined terms of the plan, the lack of one compound sentence linking those terms does not cause the plan's decision to be erroneous. Moreover, Plaintiff's disagreement with the fairness of the reimbursement terms under the plan does not render the plan's decision, which followed those terms, to be in error. . . .

Second, even though Plaintiff argues that the plan terms are unfair and ambiguous, the claims before the Court do not require the assessment of the plan participant's interpretation of the plan or her reliance on certain terms in the plan. That is an entirely different case not pleaded here . . . . Plaintiff may be disappointed with the out-of-network reimbursement terms of his patient's benefits plan, which resulted in a payment that was a small percentage of Plaintiff's charges, but Plaintiff accepted the terms of the plan when he agreed with his patient to the assignment of her benefits. . . .

When Mary A. first consulted Plaintiff about his services, he had several options. First, he could have set what he perceived as the market rate for his services and conditioned providing his services on the payment of that fee, leaving to the patient reimbursement under applicable insurance. Second, he could have agreed to accept Mary A.'s insurance and the benefit it provided (70% of 150% of the Medicare rate for the covered service) and billed Mary for the remaining 30% of the allowed and clearly defined benefit.

What he could not do was accept the benefit under the plan, take an assignment from Mary A. of any additional claims she might have, and through this lawsuit seek to blow up – without legal or factual support - the carefully and clearly drafted mutually beneficial agreement between Mary A.'s spouse's employer and Defendant. Plaintiff's claim that he is entitled to 70% of the fee he has set for his services as against this Defendant lacks any support in the law or the plan terms. Despite his protestations to the contrary, as the Court can best discern, Plaintiff seeks his demanded fee of over $217,000 simply because he thinks he's entitled to it.

In sum, the clear, unambiguous, bargained for terms of the plan provide for the exact payment Defendant paid Plaintiff. It cannot be found, therefore, that Defendant's benefits determination was without reason, unsupported by

5

substantial evidence, or erroneous as a matter of law. (Docket No. 16 at 10-14.)

Defendant now seeks to recover its fees and costs in the amount of $9,346.45 under ERISA § 502(g)(1), which provides, "[I]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).[2]

A fee-requesting party must show that it had achieved "'some degree of success on the merits.'" Perelman v. Perelman, 793 F.3d 368, 376–77 (3d Cir. 2015) (Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 244–45 (2010)) (other citation omitted). "Surmounting that hurdle requires more than 'trivial success on the merits' or a 'purely procedural victory.'" Id. (quoting Hardt, 560 U.S. at 255) (citation omitted). The court must instead be able to resolve the question "without conducting a lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" Id. (quoting Hardt, 560 U.S. at 255) (alterations omitted).

Even where the party has achieved success on the merits, the

---

[2] The Federal Rules of Civil Procedure and the Local Civil Rules permit fee shifting where a federal statute, federal rule, or court order otherwise permits. See Fed. R. Civ. P. 54(d); L. Civ. R. 54.2. Such an award must be sought on motion filed within thirty days after the entry of judgment. L. Civ. R. 54.2(a).

6

court nonetheless retains discretion as to whether to award fees in light the Ursic factors, which include:

>    (1) the offending parties' culpability or bad faith;
>
>    (2) the ability of the offending parties to satisfy an award of attorneys' fees;
>
>    (3) the deterrent effect of an award of attorneys' fees against the offending parties;
>
>    (4) the benefit conferred on members of the pension plan as a whole; and
>
>    (5) the relative merits of the parties' position[s].

Id. at 377 (quoting Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)).

Defendant argues that all the relevant considerations warrant the award of fees and costs:

(1) Success on the merits - it prevailed on all of Plaintiff's claims against it, having been awarded summary judgment in its favor.

(2) Bad faith - Plaintiff is a habitual litigant who routinely files the same canned complaint (none of which have prevailed on the merits against Defendant) as a regular part of his business model, and like his many others, the instant complaint was prosecuted without aforethought, corroborating proofs, or legal authority. Plaintiff's bad faith was recognized by the Court by finding Plaintiff's interpretation of the plan to be self-serving and that his claims were "borderline frivolous."

7

(3) Ability to satisfy award - Plaintiff has the ability to satisfy an award of attorney's fees because he holds himself out as an internationally-renowned spinal surgeon with practice locations throughout South Jersey, Defendant's fees are modest, and Plaintiff voluntarily assumed the risk because as a habitual filer of ERISA complaints, Plaintiff is presumed to be aware of ERISA's fee-shifting provision.

(4) Deterrence - Although the fees Defendant incurred on this particular groundless action were not exorbitant, when compounded over dozens of similarly baseless lawsuits, they become an undue burden on Defendant.

(5) Benefit incurred to the plan members - although one fee award, in isolation, will not reduce premiums, there is value in a deterrent to meritless claims, which in the end benefits insureds.

(6) Merits of the parties' positions – that the Court granted summary judgment in favor of Defendant, rejecting Plaintiff's contention that he was entitled to a much greater benefit than what was bargained for in the plan, supports that Plaintiff's position had no merit.

Plaintiff has opposed Defendant's motion, arguing that Plaintiff is attempting to bully him into not filing future law suits, and advancing the opposite argument to each of Plaintiff's

contentions for its entitlement to fees:[3]

(1) Success on the merits - There is no presumption that a successful plaintiff in an ERISA suit should receive an award of attorneys fees, and there is no such presumption in favor of defendants which prevail.

(2) Bad faith - Plaintiff's suit was brought in good faith because the denial of Plaintiff's appeal to the plan stated it was based on "the reasonable and customary fee schedule outlined in their benefits," and that is exactly what Plaintiff sued for. Because Plaintiff does not have access to the plan documents, it is nearly impossible to provide medically necessary services to patients by forcing every patient to prove before the surgery that they can pay the cost of services up front, confirm their benefits prior to a surgery or procedure, and that their benefits can be assigned. As a result, Plaintiff obtains an assignment of the benefits and attempts to collect those benefits after the fact through the appeals process. If Defendant had simply responded to Plaintiff's request for the plan documents during the appeal, Plaintiff would not have had to file suit, which demonstrates that Defendant's actions were the culpable ones, and Defendant should be equitably prevented from being awarded fees. The fact that

---

[3] Alternatively, Plaintiff argues that Defendant's fees are not reasonable, and if awarded, should be reduced because they are duplicative and over-billed.

9

Plaintiff acknowledges he was owed less than the amount demanded in the Complaint — regardless of the fact that there was still a fundamental disagreement between himself and Defendant as to how the plan should be interpreted with regard to the definition of the "allowed amount" — proves that Plaintiff acted in good faith.

(3) Ability to satisfy award – it is incredulous for Defendant to use as an offensive weapon the fact that Plaintiff litigates a lot, when it is Defendant's conduct – the refusal to produce the SPD or plan prior to suit – that forces Plaintiff to file a litany of lawsuits in the first place.  It is not an axiom that since Plaintiff is a doctor he is rich and can routinely afford to pay approximately $10,000.00 in attorney's fees.

(4) Deterrence - Forcing plan participants to man the laboring oar on these payment efforts instead of the out-of-network providers would be a major disservice to the patients and create a powerful incentive for doctors to sue their patients. Assuming that Defendant does not always pay according to the plan terms, which is a reasonable assumption, awarding attorneys' fees here will allow Defendant to wrongly underpay or deny claims and simply get away with it.

(5) Benefit incurred to the plan members – None, as articulated in the deterrence factor.  Defendant is essentially saying that no one should challenge its benefits determination, and, if anyone does, it will punish plan members by increasing

their premiums.

(6) Merits of the parties' positions - Although the Court ultimately disagreed with Plaintiff's position regarding the proper interpretation of the plan, this alone does not warrant granting Defendant attorney's fees, as Plaintiff had a good faith basis both in bringing this suit and interpreting the plan terms as he did.

The Court finds that Defendant has satisfied all of the factors to warrant the imposition of fees and costs on Plaintiff, except for the "bad faith" Ursic factor, but only by a hair.

As the Court observed in the Opinion granting Defendant's motion for summary judgment, Plaintiff stepped into the shoes of his patient when he obtained the assignment of benefits, and he thus occupied the same position as his patient. If the patient advanced an ERISA claim against Defendant for its benefits decision relative to the surgery performed by Plaintiff, it would have been reasonable to presume that she had access to the plan documents,[4] and, accordingly, the same presumption would apply to

---

[4] Absent some claim, which is not present here, that the plan violated 29 U.S.C. § 1024(b), which provides, "The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title--(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or (B) if later, within 120 days after the plan becomes subject to this part."

11

Plaintiff, who is standing in his patient's shoes. The Court therefore finds disingenuous Plaintiff's claim that Defendant kept him in the dark as to the nature of his patient's benefits until the discovery process of this lawsuit, because all he had to do was ask his patient for the plan documents prior to surgery – or at a minimum, prior to filing suit against Defendant.[5] Instead, Plaintiff filed suit, claiming he was entitled to the full charge of the surgery, without any consideration of the terms of his patient's insurance at all (Docket No. 1 at 12), "simply because he thinks he's entitled to it" (Docket No. 16 at 14).[6]

However, although it is a very close call, on balance and within its discretion, the Court will not award attorney's fees in this particular case despite the failure of Plaintiff's "borderline" claim. As observed by Judge Renée Marie Bumb when

---

[5] Relatedly, the Court finds disingenuous Plaintiff's contention that "it is nearly impossible to provide medically necessary services to patients by forcing every patient to prove before the surgery that they can pay the cost of services up front, confirm their benefits prior to a surgery or procedure, and that their benefits can be assigned." Plaintiff performed an elective surgery on his patient's back – it was not a life-threatening emergency. This Court also rejects the intimation that Plaintiff is some kind of Hippocratic Robin Hood seeking to vindicate the interests of poor patients against rich insurance companies. Plaintiff's interests are clear – receiving as much money as he can for his services.

[6] The Court finds Plaintiff's argument that he should be credited for later changing his position to seek 70% of his charges – and not 100% of his charges as he claimed in his complaint - unpersuasive for the reasons set forth in the Court's summary judgment Opinion.

deciding the identical motion in an almost identical case,

> Horizon's argument [] is made with the benefit of hindsight. This particular case was the first of the 17 to be filed. Thus, the complaint in this case cannot be characterized as "canned," insofar as it could not have been copied from earlier, similar complaints that Plaintiff filed.
>
> Even so, as Plaintiff correctly observes, all 17 of the cases he filed arose out of "the very same or similar circumstances." Thus, substantial similarity among complaints is -- to some extent -- to be expected, until at least there have been adjudications on the merits of the claims asserted in the complaints. As such, the Court does not find culpability within the context of this specific case.

<u>Shah v. Horizon Blue Cross Blue Shield of New Jersey</u>, 2018 WL 4380990, at *2 (D.N.J. 2018) ( 1:15-cv-08590-RMB-KMW).

In contrast to the case before Judge Bumb, this case is toward the end of the pack of seventeen cases filed by Plaintiff. (<u>See</u> 1:15-cv-08590-RMB-KMW, Docket No. 65-3, listing the seventeen cases.) As noted by Judge Bumb, however, "Plaintiff filed the last of his 17 complaints on February 6, 2017. In other words, at the time Plaintiff filed the 17th complaint, the only ruling that had been issued was this Court's decision granting in part and denying in part Horizon's Motion to Dismiss." <u>Shah</u>, 2018 WL 4380990, at *2 n.5.

"Bad faith normally connotes an ulterior motive or sinister purpose," but a "losing party may be culpable [] without having acted with an ulterior motive," and a "party is not culpable merely because it has taken a position that did not prevail in

13

litigation." McPherson v. Employees' Pension plan of American Re-Insurance Co., Inc., 33 F.3d 253, 256 (3d Cir. 1994). As a group, the seventeen cases filed by Plaintiff, including this one, have lacked merit for various reasons, but the Court cannot conclude that this case is such an outlier that an award fees and costs to Defendant is warranted. The Court is mindful that an award of attorney's fees may have the unintended consequence of chilling other cases that advance the development of the law.

Nonetheless, Plaintiff and his attorneys should take no comfort from this ruling. Despite Plaintiff's protestations to the contrary, nothing precludes him from obtaining plan documents from his patient at the same time he receives a valid assignment and examining the terms of such plans. And there is every good reason to examine them before he asserts a legal claim based on them not the least of which is Federal Rule of Civil Procedure 11. Such failures in the future may very well justify not only fee-shifting under the statute but sanctions as well.

Again, the Court echoes Judge Bumb's observation that since Plaintiff filed his group of cases, he has had numerous judges in this District opine on the validity and veracity of his claims, and he should heed those adverse opinions when considering future litigation on his assignment of benefits from his patients. Plaintiff is on notice that he may no longer be protected in this Court from the caution inherent in hindsight.

## CONCLUSION

For the reasons expressed above, Defendant's motion for attorney's fees and costs will be denied. An appropriate Order will be entered.


Date: December 18, 2018          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.